**FORD MOTOR COMPANY, Plaintiff,**

v.

**2600 ENTERPRISES, et al., Defendants.**

**No. 01–CV–71685–DT.**

United States District Court, E.D. Michigan, Southern Division.

Dec. 20, 2001.

Kathleen A. Lang, Dickinson, Wright, Detroit, MI, Thomas R. Lee, Gregory D. Phillips, Cody W. Zumwalt, Howard, Phillips, Salt Lake City, UT, for Plaintiff.

Eric Grimm, CyberBrief, PLC, Ann Arbor, MI, for Defendants.

### ORDER DENYING PLAINTIFF'S "MOTION FOR PRELIMINARY INJUNCTION"

CLELAND, District Judge.

The essential facts in this case are undisputed. Defendants 2600 Enterprises

and Eric Corley, a/k/a Emmanuel Goldstein,[1] are the registrants of the domain name "fuckgeneralmotors.com." When an Internet user enters this domain into a web browser, he is automatically linked to the official website of Plaintiff Ford Motor Company ("Ford"), which is located at "ford.com".[2] Defendant Corley, a self-proclaimed "artist and social critic," apparently considers this piece of so-called cyber-art one of his most humorous. Ford is not amused. Hence, the instant complaint alleging three Lanham Act violations: trademark dilution, 15 U.S.C. § 1125(c); trademark infringement, 15 U.S.C. § 1114(1); and unfair competition, 15 U.S.C. § 1125(a). The matter is now before the court on Ford's "Motion for Preliminary Injunction," filed on April 18, 2001. For the reasons set forth below, the court will deny Ford's motion.

## I. STANDARD

Four factors are relevant in analyzing the merits, if any, of a motion for preliminary injunction:

(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction.

*Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir.1998). The United States Court of Appeals for the Sixth Circuit has recognized that these four considerations are "factors to be balanced, not prerequisites that must be met." *Memphis Planned Parenthood, Inc. v. Sundquist*, 184 F.3d 600 (6th Cir.1999). "Accordingly, the degree of likelihood of success required may depend on the strength of the other factors." *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir.1985).

## II. ANALYSIS

The parties devoted substantial portions of their briefs discussing whether an injunction precluding Defendants' use of the word "Ford" to create a link from "fuckgeneralmotors.com" to "ford.com" would impinge the First Amendment right to free speech. Nevertheless, it is unnecessary for the court to reach that issue, as Ford has failed to allege facts sufficient to prevail on its dilution, infringement, and unfair competition claims. Thus faced with no chance of succeeding on the mer-

---

1. Mr. Corley's *nom de guerre* is taken from George Orwell's *1984*. Mr. Corley asserts that, like Orwell's fictional Goldstein, he is being persecuted for trying to expose Big Brother—here, for Big Brother's intrusion into the Internet. Incidently, Mr. Corley is the publisher of Hacker's Quarterly, an online magazine for computer hackers. While the title sounds ominous, Mr. Corley claims that the magazine's mission is to enhance the protection of confidential materials by exposing weak encryption methods before "crackers" (*i.e.*, hackers with criminal intent) do something worse. As expounded in an CNN interview, Mr. Corley's view is that "[w]hile you may resent the fact that some 14-year-old from Topeka proved your security sucks, think of what could have happened had you not learned of this and had someone else done it instead." *See* http://ww w.cnn.com/ TECH/specials/hackers/qandas/ goldstein.html (last visited Nov. 6, 2001).

2. Since the time that the complaint in this matter was filed, the website has been changed so that the opening page reads "To learn more about *FuckGeneralMotors.com* click *here*." If the Internet user clicks on the word "here," he is taken to the webpage "fordreallysucks.com". If the user clicks on the "FuckGeneralMotors.com" link, he is taken to Ford Motor Company's homepage at "ford.com". If after approximately five seconds the user has done nothing, he is linked to the "ford.com" page automatically.

its, Ford may not be granted injunctive relief.

## A. Dilution

■ In relevant part, the Federal Trademark Dilution Act ("FTDA"), codified at 15 U.S.C. § 1125(c), provides that

[t]he owner of a famous mark shall be entitled ... to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark.

15 U.S.C. § 1125(c). At issue in this case is whether Defendants' use of the FORD mark is "commercial."

In support of its assertion that Defendant's use is "commercial," Ford relies upon the case *Planned Parenthood Federation of America, Inc. v. Bucci*, No. 97 Civ. 0629(KMW), 1997 WL 133313 (S.D.N.Y. March 24, 1997). The defendant in that case, an active participant in the anti-abortion movement, registered the domain name "plannedparenthood.com" and set up a website advertising an anti-abortion book entitled *The Cost of Abortion*. The plaintiff, Planned Parenthood Federation of America, Inc. ("Planned Parenthood"), sought to enjoin the defendant from using the "plannedparenthood.com" domain. In addressing Planned Parenthood's likelihood of succeeding on its dilution claim, the court concluded that the defendant's use of the disputed domain name was "commercial" (1) because although defendant did not profit personally from Internet sales, his "self-styled effort to 'plug' *The Cost of Abortion* [fell] within the purview of the commercial use requirement"; (2) because defendant's use of the "plannedparenthood.com" domain was deemed "part and parcel" of his broader efforts to solicit contributions for the anti-abortion movement; and (3) because defendant's

actions were "designed to, and do, harm plaintiff commercially." *Id.* at *5.

In this case, no allegation has been made that Defendants are providing any goods or services for sale under the FORD mark or that they solicit funds as did the defendant in *Planned Parenthood*. Ford thus relies upon the third ground—arguably dictum—that was set forth by the *Planned Parenthood* court: namely, that the defendant's use was "commercial" in that it harmed plaintiff commercially. *See id.*

This latter theory of "commercial use" was further explained by the *Planned Parenthood* court as follows:

First, defendant has appropriated plaintiff's mark in order to reach an audience of Internet users who want to reach plaintiff's services and viewpoint, intercepting them and misleading them in an attempt to offer his own political message. Second, defendant's appropriation not only provides Internet users with competing and directly opposing information, but also prevents those users from reaching plaintiff and its services and message. In that way, defendant's use is classically competitive: he has taken plaintiff's mark as his own in order to purvey his Internet services—his web site—to an audience intending to access plaintiff's services.

*Id.*

Similarly, in *Jews for Jesus v. Brodsky*, 993 F.Supp. 282 (D.N.J.), *aff'd*, 159 F.3d 1351 (3d Cir.1998), the United States District Court for the District of New Jersey found that the defendant's use of the plaintiff's mark in the domain name "jewsforjesus.com" constituted "commercial use" because the site was "a conduit" to another of the defendant's webpages, which conducted fund raising through the sale of merchandise. Looking beyond this fact, however, the court added that

[t]he conduct of the Defendant also constitutes a commercial use of the Mark and the Name of the Plaintiff Organization because it is designed to harm the Plaintiff Organization commercially by disparaging it and preventing the Plaintiff Organization from exploiting the Mark and the Name of the Plaintiff Organization. In addition, the Defendant Internet site has and will continue to inhibit the efforts of Internet users to locate the Plaintiff organization Internet site.

*Id.* at 308.

Relying on these holdings, Ford argues that Defendants' use of the FORD mark is disparaging and prevents it from fully exploiting the value of its mark, thus constituting "commercial use." For the following reasons, however, the court rejects this analysis.

First, the facts of this case are distinguishable from both *Planned Parenthood* and *Jews for Jesus*, in which the defendants had appropriated domain names that incorporated the plaintiffs' trademarks. Here, the domain name registered by Defendants—"fuckgeneralmotors.com"—does not incorporate any of Ford's marks. Rather, Defendants only use of the word "ford" is in its programming .code, which does no more than create a hyperlink—albeit automatic—to Plaintiff's "ford.com" site. The court is unpersuaded that this use of the FORD mark in any way hampers Plaintiff's commercial success in an unlawful manner.

The essence of the Internet is that sites are connected to facilitate access to information. Including linked sites as grounds for finding commercial use or dilution would extend the statute far beyond its intended purpose of protecting trademark owners from use that have the effect of "lessening ... the capacity of a famous mark to identify and distinguish goods or services."

*Bally Total Fitness Holding Corp. v. Faber,* 29 F.Supp.2d 1161 (C.D.Cal.1998). This court does not believe that Congress intended the FTDA to be used by trademark holders as a tool for eliminating Internet links that, in the trademark holder's subjective view, somehow disparage its trademark. Trademark law does not permit Plaintiff to enjoin persons from linking to its homepage simply because it does not like the domain name or other content of the linking webpage.[3]

Second, the implication in *Planned Parenthood* and *Jews for Jesus* that the "commercial use" requirement is satisfied any time unauthorized use of a protected mark hinders the mark owner's ability to establish a presence on the Internet or otherwise disparages the mark owner is flawed. Indeed, many uses by persons other than the trademark holder are expressly placed outside the scope of the FTDA. Specifically, the statute provides that the use of famous marks "in comparative commercial advertising," in "[a]ll forms of news reporting and news commentary," as well as any "noncommercial use" (all of which frequently are designed to, and actually may, hinder the mark owner's commercial success) "shall not be actionable under this section." 15 U.S.C. § 1125(c)(4). Courts additionally have extended protection to unauthorized uses of trademarks for the expressive purposes of comedy, parody, allusion, and so forth, even where the medium of expression is sold for money. *See, e.g., Mattel, Inc. v. MCA Records,* No. CV

---

**3.** In the offline context, consider a graffiti vandal painting "Fuck General Motors" on a sign at Ford headquarters. While some other law may (or should) provide a remedy, it would be a stretch to conclude that trademark law had been violated. The same is true in this case.

97–6791 WMB, 1998 WL 422641, *14–15 (C.D.Cal. Feb. 18, 1998); *see also Charles Atlas, Ltd. v. DC Comics, Inc.*, 112 F.Supp.2d 330, 338–39 (S.D.N.Y.2000). Criticism of a product likewise warrants exemption from the anti-dilution law. *See, e.g., Northland Ins. Cos. v. Blaylock*, 115 F.Supp.2d 1108, 1122–23 (D.Minn.2000) (upholding defendant's use of "northlandinsurance.com" to criticize plaintiff Northland Insurance Companies as noncommercial speech).

While arguably neither news reporting, competitive advertising, parody, nor criticism is at issue in this case, and although Defendants' use of the term "art" hardly seems apropos, the court is satisfied that Defendants' use of the word "ford" in their programming code is, at least, "noncommercial." Their use thus is not actionable under the FTDA. If the FTDA's "commercial use" requirement is to have any meaning, it cannot be interpreted so broadly as to include any use that might disparage or otherwise commercially harm the mark owner.

## B. Infringement and Unfair Competition

■ Plaintiff similarly has failed to allege facts sufficient to show a likelihood of succeeding on the merits of its infringement and unfair competition claims. Pursuant to 15 U.S.C. § 1114(1)(a), to succeed on an infringement claim, a plaintiff must show that the defendant has used the mark "in connection with the sale, offering for sale, distribution, or advertising of any goods or services." An essentially identical showing of use "in connection with any goods or services" is required on an unfair competition claim. 15 U.S.C. § 1125(a).

Plaintiff here has made no allegation that Defendant has used the Ford mark in connection with goods and services in any literal sense. Rather, Plaintiff again relies on the *Planned Parenthood* and *Jews for Jesus* cases. As stated above, in both those cases the defendant had registered the plaintiffs' marks as domain names, such that the domain "plannedparenthood.com" was controlled by an anti-abortion activist and "jewsforjesus.com" by a nonchristian Jew. In both cases, the courts held that the marks were used in connection with informational services that competed with those offered by the plaintiffs. While this alone presumably satisfied the "in connection with any goods or services" requirement, the courts in both cases proceeded with the following analysis:

> In addition, defendant's use of plaintiff's mark 'is 'in connection with the distribution of services' because it is likely to prevent some Internet users from reaching plaintiff's own Internet web site. Prospective users of plaintiff's services who mistakenly access defendant's web site may fail to continue to search for plaintiff's own home page, due to anger, frustration, or the belief that plaintiff's home page does not exist.... Therefore, defendant's action in appropriating plaintiff's mark has a connection to *plaintiff's* distribution of services.

*Planned Parenthood*, 1997 WL 133313, *4, *quoted in Jews for Jesus*, 993 F.Supp. at 309.

Again, this court is not persuaded that the holdings in *Planned Parenthood* and *Jews for Jesus* apply to the facts of this case. First, Defendants' use of the FORD mark in their programming code, unlike the unauthorized use of a trademark as a domain name, does not inhibit Internet users from reaching the websites that are most likely to be associated with the mark holder. Second, where, as here, the unauthorized use in no way competes with the mark owner's offering of goods or services, the "in connection with goods or services" requirement is not satisfied simply because a prospective user of the Internet may face some difficulty in finding the home page he is seeking.

[T]rademark law requires reasonableness on the part of consumers. Although the need to search for a mark holder's site may rise to the level of inconvenience, this inconvenience is not cognizable. An Internet user who intends to access either party's products or services, but who has not done so before, may go to a search engine, or on America Online, to Keyword. Any inconvenience to an Internet user searching for Plaintiff's web site is trivial. Searches for Plaintiff's web page on popular internet search engines, including google.com, goto.com, and lycos.com, list Plaintiff's web site as their first or second "hits."

*Strick Corp. v. Strickland,* 162 F.Supp.2d 372, 379–80 (internal citations and alterations omitted); *see also Hasbro Inc. v. Clue Computing, Inc.,* 66 F.Supp.2d 117, 124–25. Thus, the court concludes that, as with its dilution claim, Plaintiff has failed to state claims of infringement or unfair competition.[4]

### III. CONCLUSION

For the reasons set forth above, while Plaintiff understandably may be disturbed by Defendants' acts, the Lanham Act provides no remedy. Having failed to demonstrate any likelihood of succeeding on the merits of its claim, Plaintiff is not entitled to an injunction. Accordingly,

IT IS ORDERED that Plaintiff's "Motion for Preliminary Injunction" is DENIED.

---

**4.** In a companion case, *Ford v. Greatdomains.Com Inc.,* 2001 WL 1661555, —— F.Supp.2d —— (E.D.Mich.2001), this court recently held that the FTDA also requires use of the mark in connection with goods or services. Thus, the reasoning set forth in this case with regard to the infringement and unfair competition claims provides an alternative reason for dismissing Plaintiff's dilution claim.